UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 25-cr-10383-NMG |
| v. | ) | |
| ERIC L. BROWN, | ) | |
| Defendant | ) | |

GOVERNMENT'S MOTIONS IN LIMINE

While serving as a trustee and fiduciary to a psychotherapy client, Defendant Eric Brown wired $600,000 of his client's money—nearly her entire share of a legal settlement from being struck and injured by a drunk driver years earlier—to a Hong Kong bank. To obtain that money to send it overseas, Defendant misled the client and lied to others about the reason for the transaction. Defendant lost the client's money to an overseas scammer, along with a relative's money and money he borrowed from Citizens Bank.

More than four months later, Defendant had made just a single $10,000 payment to the client. Then, just hours after the FBI began asking questions about the missing $600,000, Defendant contacted the client with a plan to repay some of the money he had taken. He has since made approximately $150,000 in monthly payments. Charged with wire fraud, Defendant now proposes to introduce evidence of these payments at trial, presumably to demonstrate his good faith. While it is commendable that Defendant has repaid some of what he took, the Court should exclude evidence of these payments at trial. Defendant's announced intent to repay and the payments themselves—both coming months to years after he took the client's money under false pretenses—are not probative of his intent to defraud months to years earlier. The Court should exclude evidence of these payments because they will focus the jury on Defendant's state

of mind at exactly the wrong moment, and because "it is axiomatic that repayment is not a defense to fraud." *Burton v. United States*, 495 F. Supp. 3d 62, 75 (D. Mass. 2020) (citation omitted); Fed. R. Evid. 401, 403.

Separately, the United States requests that the Court instruct the jury preliminarily that the government may prove the existence of the wire fraud scheme charged in Count 2 of the Indictment in either of two ways: (1) with evidence that Defendant made material misrepresentations or told half-truths to obtain his victim's money or property with the intent to defraud; and (2) as the First Circuit announced in *United States v. Cassiere,* 4 F.3d 1006 (1st Cir. 1993), with evidence that Defendant owed a fiduciary duty to his client and obtained money from her by knowingly failing to disclose material facts.

## BACKGROUND[1]

Defendant was a licensed Massachusetts psychologist, earning hundreds of thousands of dollars annually. (¶ 1). Before 2022, Defendant began treating Victim 2, who had been seriously injured after being struck by a drunk driver. In that role, Defendant had a duty to act in Victim 2's best interest. (¶ 4). In February 2022, Victim 2 asked Defendant to serve as the trustee of a trust benefitting Victim 2 ("the Trust"). The Trust's principal, which was Victim 2's share of a legal settlement from the accident, was initially $700,000. The Trust required Defendant to use the money for Victim 2's health, support, and maintenance. As Victim 2's trustee, Defendant had a duty to act in Victim 2's best interest. (¶ 6). Beginning in or about March 2022, Defendant deposited the Trust's assets with a family member ("the Advisor"), who worked at an Essex County asset management firm. (¶ 7).

[1] References below ("¶") are to paragraphs in the indictment. (Docket No. 7).

In or about August 2023, Defendant started an online relationship with a woman he knew as "Amy." Amy convinced Defendant to invest in gold and to fund his investments using cryptocurrency and bank wire transfers. In fact, Amy was a scammer, but Defendant believed otherwise at the time. (¶¶ 9-11). Defendant initially invested $25,000 of his own money with Fuex, the company to which Amy had directed him. (¶ 12). Amy and others behind Fuex sent Defendant records falsely suggesting that Amy was also investing and that Defendant's investments were profitable. (¶ 13).

In October 2023, Defendant borrowed $200,000 from a relative, Victim 1, telling the relative falsely that the money was to finance improvements on a building Defendant owned in Newton. (¶ 15). Defendant instead sent that money, at Amy's direction, to a Hong Kong bank account. (¶ 18).

Later in October 2023, Defendant asked Victim 2 for permission to invest the Trust's principal in a way that would earn the Trust better financial returns. (¶ 19). Defendant did not disclose to Victim 2 that he intended to invest the Trust's principal in precious metals using cryptocurrency or overseas bank wires; that a young woman named Amy, whom Defendant had never met, was instructing Defendant on how to invest; and that Defendant believed he was in a romantic relationship with Amy. (¶ 20).[2] Had Victim 2 known what Defendant had not disclosed, she would not have given permission to invest her legal settlement in Amy's gold scheme. (¶ 21).

---

[2] The United States also expects to prove that Defendant, without notice to Victim 2, intended to use her $600,000 to earn investment returns that could be used to retire his own personal and business debts, including a multi-million-dollar mortgage on his home, a significant debt to the IRS, and a loan secured by his commercial building.

On or about October 31, 2023, Defendant e-mailed the Advisor and stated, falsely: "After speaking with [Victim 2], I have agreed to withdraw 600K from [the Trust's] account that she wants to apply to the purchase of a home." (¶ 22). Thereafter—believing that Defendant was acting at Victim 2's direction (he was not)—the Advisor liquidated $600,000 of the Trust's holdings and, on or about November 3, 2023, wired $600,000 to Defendant. (¶ 23).

On or about November 7 and November 8, 2023, as directed by Amy or others involved with Fuex, Defendant wired the $600,000 to a Hong Kong bank account. (¶ 24).[3]

In February 2024, Defendant's family learned about Amy and the money Defendant had sent overseas. The family immediately involved the Newton Police Department ("NPD"), which took Defendant's statement. Defendant told the NPD that he believed he was in a romantic relationship with Amy and that he had invested more than $1 million, but Defendant made no mention of sending Victim 2's Trust money abroad.

Defendant made no payments to Victim 2 in February, March, April, or May 2024. On or about June 2, 2024, after Victim 2 spoke with Defendant and asked for money, Bank of America records show a single payment of $10,000 from Defendant to Victim 2.

On June 12, 2024, the FBI's investigation became public when it interviewed and served a legal demand on the Advisor, the relative whom Defendant falsely told that Victim 2 needed $600,000 to purchase a house.

On June 13, 2024, at 1:02 a.m., just hours after the FBI's interview, Defendant emailed

[3] Although not relevant to the government's motions in limine, the Indictment also alleges that Defendant lied to Citizens Bank to obtain a Home Equity Line of Credit ("HELOC") and promptly drew on that HELOC to send at least $290,000 to Fuex. (¶¶ 26-28). Defendant also solicited and received $110,000 more from his relative, Victim 1, again falsely stating that the money was for improvements on his Newton building, (¶ 31), and tried unsuccessfully to borrow $150,000 more from another relative under false pretenses. (¶ 34).

the Advisor. The text of Defendant's email announced that Defendant was "committed to recovering [Victim 2]'s assets and am sending her $10,000 every two months while I work on a long term solution for restoring the full amount to her."

On June 15, 2024, Defendant appeared before a notary and signed an affidavit stating that "Beginning on June 1, 2024, I have arranged to make bimonthly deposits of $10,000 to [Victim 2] for the next 36 months." Defendant sent the affidavit to Victim 2 that night.[4]

Defendant has continued to make monthly payments, but he still owes Victim 2 more than $450,000.

## ARGUMENT

## I. THE COURT SHOULD EXCLUDE EVIDENCE OF REPAYMENT

Defendant's after-the-fact announcement that he intended to repay Victim 2 and the monthly payments that followed it are irrelevant to the charges in this case. The Court should exclude evidence of them under Fed. R. Evid. 401. Even if the evidence of the payments had some probative value, the Court should exclude them under Fed. R. Evid. 403, because the risk of jury confusion substantially outweighs whatever probative value the payments have.

### A. Evidence of Intent to Repay is Irrelevant because Loss and Intent to Harm are not Elements of Wire Fraud.

Count 2 charges wire fraud in relation to Victim 2's money on or about November 3, 2026. (¶ 37). There are only three elements to this offense:

(1) a scheme, substantially as charged in the indictment, to defraud or obtain money or property by means of false or fraudulent pretenses;

(2) Defendant's knowing and willful participation in this scheme with the intent to defraud; and

---

[4] Bi-monthly payments of $10,000 for 36 months would amount to $180,000, which is less than a third of what Defendant took from Victim 2.

(3) the use of interstate or foreign wire communications, on or about the date alleged, in furtherance of the scheme.

First Circuit Pattern Criminal Jury Instructions; *see also United States v. Correia*, 55 F.4th 12, 26 (1st Cir. 2022). Loss to a victim is not an element of wire fraud. It follows that the absence of loss does not negate any element of a wire fraud charge. *Kousisis v. United States*, 605 U.S. 114, 124 (2025) (explaining that "the wire fraud statute is agnostic about economic loss").

What is required is a defendant's intent to defraud <u>while participating in the scheme</u>. The Indictment alleges a scheme to obtain money from Victims 1 and 2 between approximately October 2023 and February 2024. (¶¶ 9-35). Any focus on what Defendant was thinking months later in June 2024, when he first made a payment and announced an intent to repay, would be misplaced. Several courts have recognized that after-the-fact repayment is irrelevant to determining whether or not a defendant had an intent to defraud.

One session of this Court found no ineffective assistance in an attorney's failure to locate records showing that his client, a fraud defendant, had repaid his victims. *Burton*, 495 F. Supp. 3d at 75. "[I]t is axiomatic that repayment is not a defense to fraud." *Id.* (internal quotations omitted). "The intent to repay eventually is irrelevant to the question of guilt for fraud." *United States v. Allen*, 491 F.3d 178, 186 (4th Cir. 2007); *see also United States v. Martinez-Mercado*, 2022 WL 3139707, at *4 (D.P.R. Aug. 5, 2022) ("[A]s the Court determined before trial, the fact that Defendant intended to repay the funds, and ultimately did, is **not** a defense to misappropriation of postal funds") (emphasis in original).

In *United States v. Young*, a guardian for a disabled veteran used $250,000 of the veteran's money for his own purposes (and lost it). 955 F.2d 99, 101-02 (1st Cir. 1992). The Court (Breyer, J.) rejected a claim that the jury should have been instructed on the defendant's

"intent to return" the property because it was "wrong on the law." *See id.* at 104; *United States v. Angelos*, 763 F.2d 859, 861 (7th Cir. 1985) ("[I]t is irrelevant to a charge of embezzlement that the embezzler intended to return the money he embezzled—or even that he did return it."); *United States v. Coin*, 753 F.2d 1510, 1511 (9th Cir. 1985) ("The intent to return property is not a defense to embezzlement, nor to misapplication of funds.") (citations omitted). Here, too, Defendant's intent to repay is irrelevant and should be excluded.

**B. Defendant's June 2024 Payment Plan Reveals Nothing About His Intent During the Charged Scheme to Defraud.**

The disconnect between Defendant's later efforts to repay and his earlier fraudulent intent is even more pronounced when Defendant had already been confronted with his fraud. To the extent an offer of repayment could be marginally probative of what a defendant was thinking months or years earlier, that is less true when his victim has already confronted him, or when he knows he is under investigation. A defendant's repayment once he knows a criminal investigation is afoot seems more probative of his intent to avoid prosecution than anything else. *See United States v. Suba*, 132 F.3d 662, 677 (11th Cir. 1998) ("Repayment in the face of litigation does not show a lack of fraudulent intent.").

In *United States v. White*, the Sixth Circuit affirmed the exclusion of evidence that a travel agent attempted to repay money that she had obtained fraudulently after she had been confronted by her victims. 846 F.3d 170, 178 (6th Cir. 2017). The court reasoned that the "temporal relationship between the fraudulent activity and the attempts at repayment [was] too attenuated" to make the exclusion error. *Id.* "[S]ubsequent investigations, repayments, or settlement attempts shed no light on whether a defendant had a previous intent to defraud. These efforts have at best … small probative value for the purpose of showing lack of evil intent." *Id.* (quoting *United States v. Carter*, 483 F. App'x 70, 75 (6th Cir. 2012)); *Carter*, 483 F. App'x at 75

("Defendant's subsequent attempts to rectify the fraud are irrelevant to his earlier intent or state of mind, and the district court was within its broad discretion under Rule 403 to exclude that evidence."). Similarly, in *United States v. Benny*, a racketeering and mail fraud prosecution, the Ninth Circuit affirmed the district court's exclusion of evidence of the defendant's intent to repay lenders. 786 F.2d 1410, 1417 (9th Cir. 1986). The court explained that, "[w]hile an honest, good-faith belief in the truth of the misrepresentations may negate intent to defraud, a good-faith belief that the victim will be repaid and will sustain no loss is no defense at all." *Id.* Likewise here, Defendant's contemporary intent to repay is not a defense and evidence of it should accordingly be excluded.

**C. Evidence of Repayment Would Confuse the Jury.**

Even if the repayment evidence were probative of Defendant's intent to defraud, the Court should exclude it under Fed. R. Evid. 403. In *United States v. Byrd*, after noting that "a defendant's attempt to return fraudulently obtained money after a victim confronts him says little about whether he intended to defraud the victim in the first place," the Sixth Circuit held that it was not an abuse of discretion for the trial judge to exclude the attempted repayment as "a distraction with little probative value." 690 F. App'x 892, 894 (6th Cir. 2017). Repayment would similarly be a distraction in this case. Evidence of repayment says nothing about whether Defendant lied to obtain his victims' money (or made materials omissions as a fiduciary).

## II. THE COURT SHOULD INSTRUCT THE JURY THAT WIRE FRAUD BY A FIDUCIARY CAN BE PROVEN THROUGH EVIDENCE OF EITHER MATERIAL MISREPRESENTATIONS AND HALF-TRUTHS OR MATERIAL OMISSIONS.

The United States intends to prove the elements of the wire fraud to obtain Victim 2's $600,000 in two independently sufficient ways.

First, the evidence will show that Defendant obtained these funds by making material misrepresentations to the Advisor about the reason Defendant wanted to liquidate Victim 2's

Trust holdings. Defendant emailed the Advisor, falsely, that Victim 2 wanted to purchase a house when, in fact, Defendant wanted to invest in gold futures with his online girlfriend, Amy. Even Defendant's invitation to Victim 2 that he could make her more money than she was making with the Advisor was at best a half-truth with the intent to defraud, because Defendant omitted any mention of risky gold transactions or overseas investment. *See Correia*, 55 F.4th at 26 ("The term [false and fraud pretenses] extends to actual, direct false statements as well as half-truths and the knowing concealment of facts") (quoting *United States v. Blastos*, 258 F.3d 25, 29 (1st Cir. 2001)).

Second, the evidence will show that when Defendant obtained Victim 2's $600,000, he was serving both as her psychotherapist and as her trustee under a living trust. That made Defendant her fiduciary twice over. As Victim 2's therapist, Defendant was legally required to avoid personal, legal and financial relationships that could harm Victim 2. *See* 251 C.M.R. 1.10(1) (establishing as standards of conduct in Massachusetts the *Ethical Principals of Psychologists and Code of Conduct* of the American Psychological Association ("Ethical Principles")); *see also, e.g.*, Ethical Principles 3.06 ("Psychologists refrain from taking on a professional role when personal, … legal, financial, or other interests or relationships could reasonably be expected to … expose [the client] to harm or exploitation.").[5] As her financial trustee, Defendant was required to administer the Trust "solely in the interests of the beneficiaries," M.G.L. ch. 203E, § 802(a), and to fully disclose his personal interests in proposed transactions, *see Greenleaf Arms Realty Tr. I, LLC v. New Bos. Fund, Inc.*, 81 Mass. App. Ct. 282, 291 (2012) ("Good faith demands the fiduciary to make a full and honest disclosure of all

[5] Available at https://www.apa.org/ethics/code (as amended on Jan. 1, 2017).

relevant circumstances to permit a disinterested decisionmaker to exercise its informed judgment.") (internal citations omitted).

In *Cassiere*, the First Circuit upheld Judge Young's jury instruction that the government could show false or fraudulent pretenses through a fiduciary's material omission:

> A failure to disclose a material fact may also constitute a false or fraudulent misrepresentation if, one, the person was under a general professional or a specific contractual duty to make such a disclosure; and two, the person actually knew such disclosure ought to be made; and three, the person failed to make such disclosure with the specific intent to defraud.

4 F.3d at 1022; *see also United States v. Silvano*, 812 F.2d 754, 759 (1st Cir. 1987) ("Concealment of material information by an employee under a duty to disclose to his or her employer under circumstances where the non-disclosure could or does result in harm to [the employer] is a violation of the [mail fraud] statute.").

As both a therapist and a trustee, Defendant was "under a general professional … duty" to disclose all material facts regarding his transactions with Victim 2's money. *See Cassiere*, 4 F.3d at 1022. The Court accordingly should instruct the jury that Defendant's knowing failure to disclose fully his use of Victim's money with the specific intent to defraud, if proven, would constitute a false or fraudulent misrepresentation for purposes of the wire fraud charge in Count 2. *See id.*; *United States v. Titus*, 475 F. App'x 826, 835 (4th Cir. 2012) ("A scheme or artifice to defraud … may arise from a failure to disclose material information pursuant to a fiduciary, statutory, or other legal duty.") (internal quotations omitted).

## CONCLUSION

Defendant's attempt to repay Victim 2 is commendable. His payments will reduce any restitution obligation that follows from a conviction. In all likelihood, under the circumstances that Defendant stole the money, the payments will factor into the government's sentencing

recommendation. But Defendant's after-the-fact intent to repay is irrelevant. It is not probative of the intent to defraud he had while engaged in the scheme that the Indictment charges. Even if the repayment evidence were probative, the Court should exclude it under Fed. R. Evid. 403 because the danger of confusing the jury substantially outweighs any minimally probative value. Because of Defendant's fiduciary obligations to Victim 2, the Court should also instruct the jury that his knowing failure to disclose material facts would also constitute false and fraudulent pretenses within the meaning of the wire fraud statute.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

BY: SETH KOSTO Digitally signed by SETH KOSTO Date: 2026.10.13 15:45:16 -04'00'
SETH B. KOSTO
ADAM W. MCCALL
Assistant United States Attorneys

October 13, 2026

CERTIFICATE OF SERVICE

On or about October 13, 2026, I caused a true copy of the Government's Motion in Limine to Exclude Repayment Evidence to be served on counsel of record through the Electronic Case Filing System.

SETH KOSTO Digitally signed by SETH KOSTO Date: 2026.10.13 15:45:44 -04'00'
SETH B. KOSTO
Assistant United States Attorney

October 13, 2026